**CT Corporation**

**Service of Process
Transmittal**
11/06/2019
CT Log Number 536589322

TO:     Title Claims
        Fidelity National Financial, Inc.
        601 Riverside Ave
        Jacksonville, FL 32204-2901

RE:     **Process Served in Florida**

FOR:    Fidelity National Title of Florida, Inc.  (Domestic State: FL)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | JOHN P. HAINES, ETC., PLTF. vs. FIDELITY NATIONAL TITLE OF FLORIDA, INC., DFT. |
| **DOCUMENT(S) SERVED:** | Summons, Complaint, Exhibit(s) |
| **COURT/AGENCY:** | Pinellas County Circuit Court, FL<br>Case # 19007322CI |
| **NATURE OF ACTION:** | Plaintiff Demand Judgment against Defendant |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Plantation, FL |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 11/06/2019 at 17:24 |
| **JURISDICTION SERVED :** | Florida |
| **APPEARANCE OR ANSWER DUE:** | Within 20 calendar days after this summons is served on you |
| **ATTORNEY(S) / SENDER(S):** | Joshua H. Eggnatz, Esq.<br>EGGNATZ \| PASCUCCI<br>7450 Griffin Road, Suite 230<br>Davie, FL 33328<br>954-889-3359 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 11/07/2019, Expected Purge Date: 11/12/2019 |
| | Image SOP |
| | Email Notification,  Title Claims  titleclaims@fnf.com |
| | Email Notification,  Debra Sickmann  debra.sickmann@fnf.com |
| **SIGNED:**<br>**ADDRESS:** | C T Corporation System<br>1999 Bryan St Ste 900<br>Dallas, TX 75201-3140 |
| **For Questions:** | 877-564-7529<br>MajorAccountTeam2@wolterskluwer.com |

Information displayed on this transmittal is for CT
Corporation's record keeping purposes only and is provided to
the recipient for quick reference. This information does not
constitute a legal opinion as to the nature of action, the
amount of damages, the answer date, or any information
contained in the documents themselves. Recipient is
responsible for interpreting said documents and for taking
appropriate action. Signatures on certified mail receipts
confirm receipt of package only, not contents.

CIVIL ACTION SUMMONS

## IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT,
### IN AND FOR PINELLAS COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO.

JOHN P. HAINES, individually and on
behalf of all others similarly situated,

      Plaintiff,

      -vs-

FIDELITY NATIONAL TITLE OF FLORIDA, INC.,

      Defendant.

_____/

5 P
11-6-19
5Q
30\4

### SUMMONS
### PERSONAL SERVICE ON A CORPORATION

TO DEFENDANT(S):

FIDELITY NATIONAL TITLE OF FLORIDA, INC.
CT Corporation System, as Registered Agent
1200 South Pine Island Rd.
Plantation, Fl 33324

### IMPORTANT

A lawsuit has been filed against you. You have 20 calendar days after this summons is served on you to file a written response to the attached complaint with the clerk of this court. A phone call will not protect you. Your written response, including the case number given above and the names of the parties, must be filed if you want the court to hear your side of the case. If you do not file your response on time, you may lose the case, and your wages, money, and property may thereafter be taken without further warning from the court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response to the court you must also mail or take a copy of your written response to the "Plaintiff/Plaintiff's Attorney" named below.

Joshua H. Eggnatz, Esq.
Fla. Bar No.: 0067926
Michael J. Pascucci, Esq.
Fla. Bar. No.: 83397
**EGGNATZ | PASCUCCI**
7450 Griffin Road, Suite 230
Davie, FL 33314
Tel: (954) 889-3359
Fax: (954) 889-5913                      KEN BURKE CLERK CIRCUIT COURT
JEggnatz@JusticeEarned.com               315 Court Street
Mpascucci@JusticeEarned.com              Clearwater, Pinellas County, FL 33756-5165
Sgizzie@JusticeEarned.com

THE STATE OF FLORIDA

TO EACH SHERIFF OF THE STATE: You are commanded to serve this Summons and a copy
of the complaint/petition in this lawsuit on the above named defendant(s).

      DATED ON __NOV 04 2019__, 2019.

      (SEAL)             CLERK OF THE CIRCUIT COURT

                           BY:_____

(See reverse side)                         Deputy Clerk
(Vease al reves)
(Voir de l'autre cote de)

**If you are a person with a disability who needs an accommodation in order to participate in
this proceeding, you are entitled, at no cost to you, to the provision of certain assistance.
Please contact:**

**Human Rights Office**
**400 S. Ft. Harrison Ave., Ste. 500 Clearwater, FL 33756**
**Phone: 727.464.4062 V/TDD**
**Or 711 for the hearing impaired**

**Contact should be initiated at least seven days before the scheduled court appearance, or
immediately upon receiving this notification if the time before the scheduled appearance is
less than seven days.**

## IMPORTANTE

      Usted ha sido demandado legalmente. Tiene 20 Dias, contados a partir del recibo de esta
notificacion, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal. Una

llamada telefonica no lo protegera.  Si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrito, incluyendo el numero del caso y los nombres de las partes interesadas.  Si usted no contesta la demanda a tiempo, pudiese perder el caso y podria ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal. Existen otros requisitos legales.    Si lo desea, puede usted consultar a un abogado inmediatamente.  Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guia telefonica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante el tribunal, debera usted enviar por correo o entregar una copia de su respuesta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney" (Demandante o Abogado del Demandante).

## IMPORTANT

Des poursuites judiciares ont ete entreprises contre vous.  Vous avez 20 jours consecutifs a partir de la date de l'assignation de cette citation pour deposer une reponse ecrite a la plainte ci-jointe aupres de ce tribunal.    Un simple coup de telephone est insuffisant pour vous proteger. Vous etes oblige de deposer votre reponse ecrite, avec mention du numero de dossier ci-dessus et du nom des parties nommees ici, si vous souhaitez que le tribunal entende votre cause.  Si vous ne deposez pas votre reponse ecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saisis par la suite, sans aucun preavis ulterieur du tribunal.  Il y a d'autres obligations juridiques et vous pouvez requerir les services immediats d'un avocat.  Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocats ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones).

Si vous choisissez de deposer vous-meme une reponse ecrite, il vous faudra egalement, an meme temps que cette formalite, faire parvenir ou expedier une copie de votre reponse scrite au "Plaintiff/Plaintiff's Attorney" (Plaignant ou a son avocat) nomme ci-dessous.

IN THE CIRCUIT OF THE SIXTH JUDICIAL CIRCUIT
IN AND FOR PINELLAS COUNTY, FLORIDA

CASE No.:

JOHN P. HAINES, individually and on
behalf of all others similarly situated,

**CLASS REPRESENTATION**

*JURY TRIAL REQUESTED*

    *Plaintiff,*

vs.

FIDELITY NATIONAL TITLE OF
FLORIDA, INC.,

    *Defendant.*

_____/

## CLASS ACTION COMPLAINT

Plaintiff, John P. Haines (hereinafter "Plaintiff"), brings this class action under Rule 1.220

of the Florida Rules of Civil Procedure, hereby sues Defendant, Fidelity National Title of Florida,

Inc. (hereinafter "Defendant"), on behalf of himself and all others similarly situated, and alleges

as follows:

    1.    This case arises from closing fees improperly charged and collected by Defendant

from buyers of real estate transactions through the State of Florida.

    2.    This action is brought on behalf of Plaintiff and all others similarly situated

(collectively "Buyers"), pursuant to Florida Rules of Civil Procedure 1.220(b)(1), (2), and/or (3),

seeking declaratory relief, injunctive relief, and/or damages in excess of Fifteen Thousand Dollars

($15,000.00), exclusive of interest, costs, and attorneys' fees.

## THE PARTIES, JURISDICTION AND VENUE

    3.    Plaintiff is an individual residing in Pinellas County, Florida.

4.      Defendant, a licensed title agency (hereinafter "Closing Agent"), is a Florida corporation, having its principal place of business in Duval County, Florida, listed as 601 Riverside Avenue, Jacksonville, Florida, and is therefore a citizen of the state of Florida. Defendant lists a registered agent as CT Corporation System.

5.      Jurisdiction exists pursuant to Florida Statute § 48.193(1)(a)(1), because Defendant has its principal place of business in this state, and operates, conducts, engages in, and carries on its business in this state.

6.      Venue exists pursuant to Florida Statutes §§ 47.011, 47.041, and 47.051, because Plaintiff's causes of action accrued in this county. Defendant conducts business in Pinellas County, Florida, and the events, acts, breaches, misrepresentations, and/or omissions giving rise to Plaintiff's causes of action occurred in Pinellas County.

7.      Defendant and its employees, subsidiaries, affiliates, and other related entities, were, at all times relevant herein, agents, servants and employees of each other, and at all times herein mentioned, each was acting within the purpose and scope of said agency and employment. Whenever reference in this Complaint is made to any act or transaction of Defendant, such allegation shall be deemed to mean that the principals, officers, directors, employees, agents, and/or representatives of Defendant committed, knew of, performed, authorized, ratified and/or directed such act or transaction on behalf of Defendant, while actively engaged in the scope of their duties.

## FACTS COMMON TO ALL CLAIMS

8.      On or about June 29, 2019, Plaintiff entered into a real estate purchase and sale contract (hereinafter "Contract") with the owner (hereinafter "Seller") of certain real estate located in Pinellas Florida (hereinafter "Property"). Pursuant to the terms of the Contract, Plaintiff agreed

to pay cash for the Seller's Property. Accordingly, the Contract was between Plaintiff, as the "Buyer," and the owners, as the "Seller."

9.      The Contract is a standardized form known as the "'AS IS' Residential Contract for Sale and Purchase" approved by the Florida Bar and Florida Association of Realtors. (hereinafter "FARBAR Contract").

10.     A copy of the Contract is attached hereto as **Exhibit "A"**.

11.     Paragraph 9 of the Contract states in relevant part:

> 9.      **CLOSING COSTS; TITLE INSURANCE . . .**
>
> (a)     **COSTS TO BE PAID BY SELLER:**
>
> <div align="center">***</div>
>
> •       Owner's Policy and Charges (if Paragraph 9(c)(i) is checked
>
> <div align="center">***</div>
>
> (c)   **TITLE EVIDENCE AND INSURANCE:** At least _____ (if left blank, then 15, or if Paragraph 8(a) is checked, then 5) days prior to Closing Date ("Title Evidence Deadline"), a title insurance commitment issued by a Florida licensed title insurer, with legible copies of instruments listed as exceptions attached thereto ("Title Commitment") and, after Closing, an owner's policy of title insurance (see STANDARD A for terms) shall be obtained and delivered to Buyer. If Seller has an owner's policy of title insurance covering the Real Property, a copy shall be furnished to Buyers and Closing Agent within 5 days after Effective Date. **The owner's title policy premium, title search and closing services (collectively, "Owner's Policy and Charges") shall be paid, as set forth below.** The title insurance premium charges for the owner's policy and any lender's policy will be calculated and allocated in accordance with Florida law, but may be reported differently on certain federally mandated closing disclosures and other closing documents. For purposes of this Contract "municipal lien search" means a search of records necessary for the owner's policy of title insurance to be issued without exception for unrecorded liens imposed pursuant to Chapters 159 or 170, F.S., in favor of any governmental body, authority or agency.
>
> **(CHECK ONE):**
>
> _x_ (i) *Seller shall* **designate Closing Agent and** *pay for Owner's Policy and Charges,* **and Buyer shall pay the premium for Buyer's lender's policy and charges for closing services** *related to* **the lender's policy, endorsements and loan closing, which amounts shall be paid by Buyer to Closing Agent or such other provider(s) as Buyer may select; (emphasis added) . . .**

12.     Pursuant to Paragraph 9(c) of the Contract, the owner's title policy premium, title search and **title agent closing services** (collectively, "Owners Policy and Charges") were to be charged to either the Buyer or Seller consistent with the terms of the Contract.

13.     The Buyer and Seller agreed to the option reflected in Paragraph 9(c)(i) of the Contract, which specifies that the **Seller** "**shall** designate Closing Agent and **pay for Owner's Policy and Charges**".

14.     Pursuant to Paragraph 9(c)(i), charges and fees are only to be paid by the Buyer in the event the transaction is being financed by a lender. Since the Contract here was an all-cash transaction with no lender, Plaintiff was not responsible for any title agent fees, title policy premiums or lender endorsements.

15.     Defendant was the designated Closing Agent for the procurement of title insurance and to perform closing services ("Closing Services") in connection with the transaction. In its capacity as a Closing Agent, Defendant performed Closing Services in connection with the transaction for which Defendant charged a fee ("Closing Services Fee").

16.     The Contract provided that the Closing Services Fee would only be charged to, and collected from, the Seller. Because the sale was a cash transaction, there was no lender's policy, endorsement or related loan closing services required to be paid by Plaintiff, the Buyer.

17.     At closing of the transaction, Defendant prepared a closing settlement disclosure statement a/k/a HUD ("Closing Statement") detailing the receipts and disbursements made on Plaintiff's account, including the allocation of Defendant's Closing Services Fee. A copy of the Closing Statement is attached hereto as **Exhibit "B"**.

18.     As indicated on the Closing Statement, a settlement or closing fee in the amount of $350.00 was improperly charged by Defendant to Plaintiff.

19.     This amount was charged to Plaintiff's account despite the explicit language in the Contract stating that "Seller shall . . . pay for Owner's Policy and Charges," which, by definition, included Defendant's Closing Services Fee.

20.     Consequently, Plaintiff and class members have been improperly and unfairly charged monies by the Defendant Closing Agent, which Defendant was not authorized to collect from Plaintiff and Class Members.

21.     Defendant knew or should have known that it was only permitted to charge the Seller for the Closing Services Fee.

22.     All conditions precedent to this action have occurred.

23.     Plaintiff has retained the undersigned attorneys and is obligated to pay said attorney a reasonable attorney's fee.

## CLASS REPRESENTATION ALLEGATIONS

24.     Plaintiff re-alleges and incorporates by reference all allegations set forth in the preceding paragraphs of this Complaint, as if fully set forth verbatim herein.

25.     Plaintiff brings this class action under Florida Rules of Civil Procedure 1.220(b)(1) and/or 1.220(b)(2), and in the alternative, 1.220(b)(3) on behalf of himself and on behalf of a similarly situated "Class" or "Class Members."

26.     The prerequisites set forth in Florida Rule of Civil Procedure 1.220(a) have been met in order to maintain this matter as a class action because "(1) the members of the class are so numerous that separate joinder of each member is impracticable, (2) the claim or defense of the representative party raises questions of law or fact common to the questions of law or fact raised by the claim or defense of each member of the class, (3) the claim or defense of the representative party is typical of the claim or defense of each member of the class, and (4) the representative party

can fairly and adequately protect and represent the interests of each member of the class." FLA. R. CIV. PRO. 1.220(a).

27. Plaintiff brings this class action individually, and on behalf of a putative class of similarly situated Buyers, and seeks class certification of the claims and issues pleaded in this Complaint, on behalf of the Class defined as follows:

> **All Buyers in all cash real estate sale transactions in Florida, that used an "AS IS" Residential Contract for Sale and Purchase form approved by the Florida Bar and Florida Association of Realtors, that selected sub-paragraph (i) of section 9(c), but who were charged and paid a Closing Agent Closing Services Fee, during the four years precedent to the date of filing this Complaint, through and until the date Notice is provided to the Class.**

28. Excluded from the Class are governmental entities, Defendant, any entity in which Defendant has a controlling interest, and Defendant's officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns. Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

29. All Class Members were and are similarly affected by Defendant's conduct and business practice because they all were cash Buyers who agreed to be charged consistent with section 9(c)(i) of the uniform and standardized FARBAR Contract, but who were all nonetheless charged and paid Closing Services Fees.

30. This matter is appropriate for a class action pursuant to Florida Rule of Civil Procedure 1.220(b)(1), because "the prosecution of separate claims or defenses by or against individual members of the Class would create a risk of either: (A) inconsistent or varying adjudications concerning individual members of the class which would establish incompatible standards of conduct for the party opposing the class; or (B) adjudications concerning individual members of the class which would, as a practical matter, be dispositive of the interests of other

Page 6

members of the Class who are not parties to the adjudications, or substantially impair or impede the ability of other members of the Class who are not parties to the adjudications to protect their interests."

31.     A class action is also appropriate pursuant to Florida Rule of Civil Procedure 1.220(b)(2), which states: "the party opposing the class has acted or refused to act on grounds generally applicable to all the members of the class, thereby making final injunctive relief or declaratory relief concerning the class as a whole appropriate." Here, Defendant's consistent business practice affects all Class Members, including Buyers who may use Defendant as their Closing Agent at the selection of Sellers in the future. Therefore, Defendant's wrongful business practice is continuing and on-going.

32.     In the alternative, a class action is proper pursuant to Florida Rule of Civil Procedure 1.220(b)(3), because "the claim or defense is not maintainable under either subdivision (b)(1) or (b)(2), but the questions of law or fact common to the claim or defense of the representative party and the claim or defense of each member of the class predominate over any question of law or fact affecting only individual members of the class, and class representation is superior to other available methods for the fair and efficient adjudication of the controversy. The conclusions shall be derived from consideration of all relevant facts and circumstances, including (A) the respective interests of each member of the class in individually controlling the prosecution of separate claims or defenses, (B) the nature and extent of any pending litigation to which any member of the class is a party and in which any question of law or fact controverted in the subject action is to be adjudicated, (C) the desirability or undesirability of concentrating the litigation in the forum where the subject action is instituted, and (D) the difficulties likely to be encountered in the management of the claim or defense on behalf of a class."

Page 7

33.     Based on the estimated number of all cash land sale transactions throughout Florida and investigation of counsel, it is readily apparent that the number of Buyers is so large as to make joinder impractical. Based on information and belief, the size of the Class is likely in the thousands and easily includes more than forty (40) class members. Nevertheless, despite the estimated size of the Class, Class Members may be notified of the class certification and pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice through the assistance of a Class Action Administrator.

34.     Questions of law and fact common to the Plaintiff and Class Members that predominate over questions affecting only individual members, include, *inter alia*:

a.  Whether Plaintiff and Class Members entered into FARBAR Contracts with Sellers;

b.  Whether Defendant acted as a Closing Agent in connection with the FARBAR Contracts that Plaintiff and Class Members entered into with Sellers;

c.  Whether Defendant breached a duty of care owed to Plaintiff and Class Members as Buyers;

d.  Whether Defendant was grossly negligent by charging Plaintiff and Class Members a Closing Agent Closing Services Fee;

e.  Whether Defendant's conduct injured Plaintiff and the Class Members, and if so, the extent of the injury suffered by Plaintiff and Class Members;

f.  Whether Plaintiff and Class Members are entitled to declaratory relief; and

g.  Whether Plaintiff and Class Members are entitled to any other relief, including injunctive relief.

35.     The claims asserted by Plaintiff in this action are typical of the claims of Class Members as the claims arise from the same course of conduct by Defendant, and the relief sought within the Class is common to each of the Class Members.

36.     Plaintiff and Plaintiff's counsel will fairly and adequately represent and protect the interests of the Class. Plaintiff has retained counsel competent and experienced in both consumer protection and class action litigation. Plaintiff's counsel has represented consumers in a wide variety of class actions where they were approved as class counsel.

37.     A class action is a fair and appropriate method for the adjudication of the controversy, in that it will permit a large number of claims to be resolved in a single forum simultaneously, efficiently, and without the unnecessary hardship that would result from the prosecution of numerous individual actions and the duplication of discovery, effort, expense and burden on the courts that individual actions would engender.

38.     The benefits of proceeding as a class action, including providing a method for obtaining redress for claims that would not be practical to pursue individually, outweigh any difficulties that might be argued regarding the management of this class action.

39.     Absent a class action, it would be highly unlikely that the representative Plaintiff or any other Class member would be able to protect their own interests because the cost of litigation through individual lawsuits might exceed expected recovery.

40.     The questions of law or fact common to the respective Class Members predominate over questions of law or fact affecting only individual members.

41.     This predominance makes class action litigation superior to any other method available for a fair and efficient litigation of the claims at issue in this matter.

## COUNT I
### (Gross Negligence)

42. Plaintiff adopts and realleges paragraphs 1 through 41 as if fully set forth herein.

43. Defendant was the Closing Agent for Plaintiff's cash purchase of real property pursuant to the Contract.

44. Defendant owed a duty of care to Plaintiff and Class Members to act competently and diligently with regards to closing the sale between Buyers and Seller.

45. In performing Closing Services for the transaction, Defendant breached its duty of care to the Plaintiff in the process of closing the sale and acted with gross negligence, as Defendant either wholly failed to review Paragraph 9(c) of the Contract or recklessly disregarded the terms of Paragraph 9(c) of the Contract.

46. Consequently, Plaintiff and Class Members were charged a Closing Services Fee, despite the Contract stating that the Closing Services Fee would be charged to the Seller.

47. Defendant's conduct evidences a reckless indifference to the rights of Plaintiff and a failure to exercise even the slightest degree of care.

48. As a direct and proximate result of the Defendant's gross negligence, Plaintiff and Class Members have been damaged.

WHEREFORE, Plaintiff demands judgment for damages in the amount of the total Closing Services Fees paid by and charged to Plaintiff and Class Members, together with interest and costs and an award of attorney's fees as permitted pursuant to applicable common benefit law.

## COUNT II
### (Negligence)

49. Plaintiff adopts and realleges paragraphs 1 through 41 as if fully set forth herein.

50. Defendant was the Closing Agent for the subject real estate transaction.

51. Defendant owed a duty of care to Plaintiff and Class Members to act competently and diligently with regards to closing the sale between Buyers and Seller.

52. In performing Closing Services for the transaction, Defendant breached its duty of care to the Plaintiff in the process of closing the sale and acted with negligence, as Defendant failed to supervise and carry out the closing in a reasonable matter, in that Defendant either neglected to review Paragraph 9(c) of the Contract or disregarded the terms of Paragraph 9(c) of the Contract.

53. Consequently, Plaintiff was charged a Closing Services Fee, despite the Contract stating that the Closing Services Fee would be charged to the Seller.

54. Defendant's conduct evidences a failure to exercise reasonable care.

55. As a direct and proximate result of the Defendant's negligence, Plaintiff and Class Members have been damaged.

WHEREFORE, Plaintiff demands judgment for damages in the amount of the total Closing Services Fees paid by and charged to Plaintiff and Class Members, together with interest and costs and an award of attorney's fees as permitted pursuant to applicable common benefit law.

## COUNT III
### (Breach of Fiduciary Duty)

56. Plaintiff adopts and realleges paragraphs 1 through 41 as if fully set forth herein.

57. By virtue of its status as the closing or escrow agent in its relationship with the Plaintiff and Class Members, Defendant owed a fiduciary duty to Plaintiff and Class Members to deal in the utmost good faith and in the interest of the Buyers.

58. As Closing Agent, Defendant's fiduciary duty included the duty to conduct and supervise the closing in a non-negligent manner, and with honesty and in good faith.

59. Defendant breached its fiduciary duty by improperly representing on the Closing Statement that the Plaintiff and Class Members were responsible for payment of the Closing

Services Fee and charging and collecting said Closing Services Fees from Plaintiff and Class Members.

60.     As a direct and proximate result of Defendant's breach and dereliction of fiduciary duty, Plaintiff and Class Members have been damaged.

WHEREFORE, Plaintiff demands judgment for damages in the amount of the total Closing Services Fees paid by and charged to Plaintiff and Class Members, together with interest and costs and an award of attorney's fees as permitted pursuant to applicable common benefit law.

## COUNT IV
### (Declaratory Judgment)

61.     Plaintiff adopts and realleges paragraphs 1 through 41 as if fully set forth herein.

62.     This Court has jurisdiction over this action for Declaratory Relief pursuant to Fla. Stat. § 86.011.

63.     As a Buyer in the real estate transaction that is the subject of this action, Plaintiff has a legal interest in, and there is doubt, as to whether Defendant was entitled under the Contract to charge Plaintiff a Closing Services Fee in connection with Plaintiff's purchase of the Property referenced in the Contract.

64.     There is bona fide, justiciable controversy between the parties as to Defendant's entitlement to charge Plaintiff and Class Members a Closing Services Fee, and an actual, practical, and present need for a declaration.

65.     Plaintiff's entitlement to a return of the Closing Services Fee improperly charged to Plaintiff is dependent on a declaration of facts, or the law applied to the facts of this dispute.

66.     Plaintiff and Defendant have an actual, present adverse interest in the subject matter of the declaration requested, either in fact or law.

67.     The relief sought is not seeking an advisory opinion from the Court.

WHEREFORE, Plaintiff requests a declaration that Defendant had and has no legal right under the terms of the Contract to charge Plaintiff and Class Members a Closing Services Fee for the subject transaction, declaring and ordering Plaintiff's and Class Members' entitlement to a refund of the Closing Services Fee paid by them, and for such other and further relief as the Court deems appropriate, including damages together with interest and costs, and an award of attorney's fees pursuant to applicable common benefit law.

## COUNT V
### (Unjust Enrichment)

68.     Plaintiff adopts and realleges paragraphs 1 through 41 as if fully set forth herein.

69.     This cause of action is pleaded as an alternative to Plaintiff's legal remedies alleged in this Complaint.

70.     Plaintiff and Class Members conferred a benefit on Defendant, in that Defendant collected an improper and wrongful Closing Services Fee from Plaintiff and Class Members.

71.     Defendant knew and appreciated that it charged and collected a Closing Services Fee from Plaintiff and Class Members, as Defendant prepared the Closing Statement and conducted and supervised the closing.

72.     Defendant voluntarily accepted and retained the Closing Services Fees paid Plaintiff and Class Members.

73.     As a direct and proximate result of the foregoing, Plaintiff has been damaged.

74.     The circumstances render Defendant's retention of the Closing Services Fees paid by Plaintiff and Class Members inequitable and unfair unless Defendant returns the money that was improper collected from Plaintiff and Class Members.

75.     As a direct and proximate result of the foregoing, Plaintiff and Class Members have been damaged.

WHEREFORE, Plaintiff demands judgment for damages in the amount of the total Closing Services Fees paid by and charged to Plaintiff and Class Members, together with interest and costs and an award of attorney's fees as permitted pursuant to applicable common benefit law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually, and on behalf of all others similarly situated, prays for judgment and relief on all causes of action alleged above, as follows:

A.     For an order certifying that this action may be maintained as a class action, certifying Plaintiff as representative of the Class, ordering Defendant to pay all costs associated with notice and administration of payment to the Class, and designating Plaintiff's attorneys as Class Counsel;

B.     A declaration that Defendant's practice, collecting Closing Services Fees from Buyers in cash transactions under FARBAR Contracts, violates the rights of Buyers;

C.     An injunction prohibiting Defendant from collecting Closing Services Fees from Buyers in cash transactions under FARBAR Contracts;

D.     For an order requiring Defendant to pay full restitution to Plaintiff and all Class Members;

E.     For an order requiring Defendant to disgorge all ill-gotten gains flowing from its unlawful and unfair business practices alleged in this Complaint;

F.     For an award of actual damages in an amount to be determined at trial;

G.     For an award of costs of this suit, including reasonable attorney's fees;

H.     For an award of pre- and post-judgment interest on any amounts awarded; and

I.     Providing such further relief as may be just, appropriate, or proper.

## JURY DEMAND

Plaintiff respectfully demands a trial by jury on all issues so triable.

DATED: November 4, 2019                    Respectfully Submitted,

                              By:    */s/ Joshua H. Eggnatz*
                                     Joshua H. Eggnatz, Esq. (FBN: 0067926)
                                     E-mail: JEggnatz@JusticeEarned.com
                                     **EGGNATZ | PASCUCCI**
                                     7450 Griffin Road, Suite 230
                                     Davie, FL 33328
                                     Telephone: 954-889-3359
                                     Facsimile: 954-889-5913

                                     Seth M. Lehrman (FBN: 132896)
                                     E-mail: seth@epllc.com
                                     **EDWARDS POTTINGER LLC.**
                                     425 North Andrews Avenue, Suite 2
                                     Fort Lauderdale, FL 33301
                                     Telephone: 954-524-2820
                                     Facsimile: 954-524-2822

                                     Richard B. Feinberg (FBN: 802808)
                                     E-mail: ricfeinberg@hotmail.com
                                     **FLORIDA LEGACY LAW, LLC**
                                     600 Cleveland Street, Suite 313
                                     Clearwater, FL 33755
                                     Telephone: 727 231-6400

                                     *Attorneys for Plaintiff and the Putative Class*

# EXHIBIT A

Authentisign ID:1835012D1-5C1D-40ED-87E1-7BAFAFAA6AAF

## "AS IS" Residential Contract For Sale And Purchase

**THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR**

Y   Realtors

**PARTIES:**    STEPHEN & MARTHA ALEXANDER    ("Seller").
and    JOHN P HAINES    ARMAND LE DAUBY    ("Buyer").
agree that Seller shall sell and Buyer shall buy the following described Real Property and Personal Property
(collectively "Property") pursuant to the terms and conditions of this AS IS Residential Contract For Sale And Purchase
and any riders and addenda ("Contract"):

1. **PROPERTY DESCRIPTION:**
   (a) Street address, city, zip:   7400   SUN ISLAND DR   606   SOUTH PASADENA   33707-4419
   (b) Located in:   Pinellas   County Florida. Property Tax ID #:   30-31-16-03610-000-6060
   (c) Real Property: The legal description is
   BAY ISLAND GROUP NO 1 CONDO APT 606

   together with all existing improvements and fixtures, including built-in appliances, built-in furnishings and
   attached wall-to-wall carpeting and flooring ("Real Property") unless specifically excluded in Paragraph 1(e) or
   by other terms of this Contract.
   (d) Personal Property: Unless excluded in Paragraph 1(e) or by other terms of this Contract, the following items
   which are owned by Seller and existing on the Property as of the date of the initial offer are included in the
   purchase: range(s)/oven(s), refrigerator(s), dishwasher(s), disposal, ceiling fan(s) intercom, light fixture(s),
   drapery rods and draperies, blinds, window treatments, smoke detector(s), garage door opener(s), security gate
   and other access devices, and storm shutters/panels ("Personal Property").
   Other Personal Property items included in this purchase are:Dishwasher, Disposal
   Electric Water Heater, Exhaust Fan, Microwave, Range, Range Hood, Refrigerator
   Personal Property is included in the Purchase Price, has no contributory value, and shall be left for the Buyer
   (e) The following items are excluded from the purchase:____

### PURCHASE PRICE AND CLOSING

2. **PURCHASE PRICE (U.S. currency)**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $_____

   (a) Initial deposit to be held in escrow in the amount of (checks subject to COLLECTION) ...$_____
   The initial deposit made payable and delivered to "Escrow Agent" named below:
   (CHECK ONE): (i) ☐ accompanies offer or (ii) ☒ is to be made within _3_ (if left     06/30/2019
   blank, then 3) days after Effective Date. IF NEITHER BOX IS CHECKED, THEN
   OPTION (ii) SHALL BE DEEMED SELECTED.     [JPH]  [ALD]
   Escrow Agent Information: Name:   FIDELITY NATIONAL , 727-369-5130
   Address:   POLLY , 3401 4TH ST N, ST PETE     MCA  SLA
   Phone:_____  E-mail:_____  Fax:_____
   (b) Additional deposit to be delivered to Escrow Agent within _____ (if left blank, then 10)
   days after Effective Date . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $_____
   (All deposits paid or agreed to be paid, are collectively referred to as the "Deposit")
   (c) Financing: Express as a dollar amount or percentage ("Loan Amount") see Paragraph 8.....   MCA  SLA
   (d) Other:_____   $_____
   (e) Balance to close (not including Buyer's closing costs, prepaids and prorations) by wire    [JPH]
   transfer or other COLLECTED funds . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $_____
   NOTE: For the definition of "COLLECTION" or "COLLECTED" see STANDARD S.    [ALD]

3. **TIME FOR ACCEPTANCE OF OFFER AND COUNTER-OFFERS; EFFECTIVE DATE:**
   (a) If not signed by Buyer and Seller, and an executed copy delivered to all parties on or before
   6/30/2019   , this offer shall be deemed withdrawn and the Deposit, if any, shall be returned to
   Buyer. Unless otherwise stated, time for acceptance of any counter-offers shall be within 2 days after the day
   the counter-offer is delivered.
   (b) The effective date of this Contract shall be the date when the last one of the Buyer and Seller has signed or
   initialed and delivered this offer or final counter-offer ("Effective Date").

4. **CLOSING DATE:** Unless modified by other provisions of this Contract, the closing of this transaction shall occur
   and the closing documents required to be furnished by each party pursuant to this Contract shall be delivered
   ("Closing") on   or before  7/30/2019   ("Closing Date"), at the time established by the Closing Agent.

Buyer's Initials [JPH] [ALD]   Page 1 of 12   Seller's Initials MCA SLA

FloridaRealtors/FloridaBar-ASIS-6x   Rev.6/19 ©2017 Florida Realtors® and The Florida Bar   All rights reserved

This software is licensed to [Maryann Spearman - CENTURY 21 COAST TO COAST] www.transactiondesk.com.   Instanet

Electronically Signed using eSignOnline™ [ Session ID . 7771fa81-f28e-47a1-82e1-497089fe7227 ]

Authentisign ID: 1925$1D1-EC16-4D5D-97E1-7BAFAF0AAAAF

**5. EXTENSION OF CLOSING DATE:**

(a) If Paragraph 8(b) is checked and Closing funds from Buyer's lender(s) are not available on Closing Date due to Consumer Financial Protection Bureau Closing Disclosure delivery requirements ("CFPB Requirements"), then Closing Date shall be extended for such period necessary to satisfy CFPB Requirements, provided such period shall not exceed 10 days.

(b) If an event constituting "Force Majeure" causes services essential for Closing to be unavailable, including the unavailability of utilities or issuance of hazard, wind, flood or homeowners' insurance, Closing Date shall be extended as provided in STANDARD G.

**6. OCCUPANCY AND POSSESSION:**

(a) Unless the box in Paragraph 6(b) is checked, Seller shall, at Closing, deliver occupancy and possession of the Property to Buyer free of tenants, occupants and future tenancies. Also, at Closing, Seller shall have removed all personal items and trash from the Property and shall deliver all keys, garage door openers, access devices and codes, as applicable, to Buyer. If occupancy is to be delivered before Closing, Buyer assumes all risks of loss to the Property from date of occupancy, shall be responsible and liable for maintenance from that date, and shall be deemed to have accepted the Property in its existing condition as of time of taking occupancy.

(b) ☐ CHECK IF PROPERTY IS SUBJECT TO LEASE(S) OR OCCUPANCY AFTER CLOSING. If Property is subject to a lease(s) after Closing or is intended to be rented or occupied by third parties beyond Closing, the facts and terms thereof shall be disclosed in writing by Seller to Buyer and copies of the written lease(s) shall be delivered to Buyer, all within 5 days after Effective Date. If Buyer determines, in Buyer's sole discretion, that the lease(s) or terms of occupancy are not acceptable to Buyer, Buyer may terminate this Contract by delivery of written notice of such election to Seller within 5 days after receipt of the above items from Seller, and Buyer shall be refunded the Deposit thereby releasing Buyer and Seller from all further obligations under this Contract. Estoppel Letter(s) and Seller's affidavit shall be provided pursuant to STANDARD D. If Property is intended to be occupied by Seller after Closing, see Rider U. POST-CLOSING OCCUPANCY BY SELLER.

**7. ASSIGNABILITY: (CHECK ONE):** Buyer ☐ may assign and thereby be released from any further liability under this Contract; ☐ may assign but not be released from liability under this Contract, or ☒ may not assign this Contract.

**FINANCING**

**8. FINANCING:**

☒ (a) Buyer will pay cash for the purchase of the Property at Closing. There is no financing contingency to Buyer's obligation to close. If Buyer obtains a loan for any part of the Purchase Price of the Property, Buyer acknowledges that any terms and conditions imposed by Buyer's lender(s) or by CFPB Requirements shall not affect or extend the Buyer's obligation to close or otherwise affect any terms or conditions of this Contract.

☐ (b) This Contract is contingent upon Buyer obtaining approval of a ☐ conventional ☐ FHA ☐ VA or ☐ other _____ (describe) loan within _____ (if left blank, then 30) days after Effective Date ( Loan Approval Period ) for (CHECK ONE): ☐ fixed, ☐ adjustable, ☐ fixed or adjustable rate in the Loan Amount (See Paragraph 2(c)), at an initial interest rate not to exceed _____ % (if left blank, then prevailing rate based upon Buyer's creditworthiness), and for a term of _____ (if left blank, then 30) years ("Financing").

(i) Buyer shall make mortgage loan application for the Financing within _____ (if left blank, then 5) days after Effective Date and use good faith and diligent effort to obtain approval of a loan meeting the Financing terms ("Loan Approval") and thereafter to close this Contract. Loan Approval which requires a condition related to the sale by Buyer of other property shall not be deemed Loan Approval for purposes of this subparagraph.

Buyer's failure to use diligent effort to obtain Loan Approval during the Loan Approval Period shall be considered a default under the terms of this Contract. For purposes of this provision, "diligent effort" includes, but is not limited to, timely furnishing all documents and information and paying all fees and charges requested by Buyer's mortgage broker and lender in connection with Buyer's mortgage loan application.

(ii) Buyer shall keep Seller and Broker fully informed about the status of Buyer's mortgage loan application, Loan Approval, and loan processing and authorizes Buyer's mortgage broker, lender, and Closing Agent to disclose such status and progress, and release preliminary and finally executed closing disclosures and settlement statements, to Seller and Broker.

(iii) Upon Buyer obtaining Loan Approval, Buyer shall promptly deliver written notice of such approval to Seller.

(iv) If Buyer is unable to obtain Loan Approval after the exercise of diligent effort, then at any time prior to expiration of the Loan Approval Period, Buyer may provide written notice to Seller stating that Buyer has been unable to obtain Loan Approval and has elected to either
(1) waive Loan Approval, in which event this Contract will continue as if Loan Approval had been obtained; or
(2) terminate this Contract.

This software is licensed to Maryann Spearman • CENTURY 21 COAST TO COAST www.transactiondesk.com.  Instanet

Authentisign ID: 1825B12L-CC16-4UED-87EL-ZBAPAPA6AAAF

(v) If Buyer fails to timely deliver either notice provided in Paragraph 8(b)(iii) or (iv), above, to Seller prior to expiration of the Loan Approval Period, then Loan Approval shall be deemed waived, in which event this Contract will continue as if Loan Approval had been obtained, provided however, Seller may elect to terminate this Contract by delivering written notice to Buyer within 3 days after expiration of the Loan Approval Period.

(vi) If this Contract is timely terminated as provided by Paragraph 8(b)(iv)(2) or (v), above, and Buyer is not in default under the terms of this Contract, Buyer shall be refunded the Deposit thereby releasing Buyer and Seller from all further obligations under this Contract.

(vii) If Loan Approval has been obtained, or deemed to have been obtained, as provided above, and Buyer fails to close this Contract, then the Deposit shall be paid to Seller unless failure to close is due to: (1) Seller's default or inability to satisfy other contingencies of this Contract; (2) Property related conditions of the Loan Approval have not been met (except when such conditions are waived by other provisions of this Contract); or (3) appraisal of the Property obtained by Buyer's lender is insufficient to meet terms of the Loan Approval, in which event(s) the Buyer shall be refunded the Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract.

☐ (c) Assumption of existing mortgage (see rider for terms)

☐ (d) Purchase money note and mortgage to Seller (see riders; addenda; or special clauses for terms).

## CLOSING COSTS, FEES AND CHARGES

**9. CLOSING COSTS; TITLE INSURANCE; SURVEY; HOME WARRANTY; SPECIAL ASSESSMENTS:**

**(a) COSTS TO BE PAID BY SELLER:**

- Documentary stamp taxes and surtax on deed, if any
- Owner's Policy and Charges (if Paragraph 9(c)(i) is checked)
- Title search charges (if Paragraph 9(c)(iii) is checked)
- Municipal lien search (if Paragraph 9(c)(i) or (iii) is checked)

- HOA/Condominium Association estoppel fees
- Recording and other fees needed to cure title
- Seller's attorneys' fees
- Other:

If, prior to Closing, Seller is unable to meet the AS IS Maintenance Requirement as required by Paragraph 11 a sum equal to 125% of estimated costs to meet the AS IS Maintenance Requirement shall be escrowed at Closing. If actual costs to meet the AS IS Maintenance Requirement exceed escrowed amount, Seller shall pay such actual costs. Any unused portion of escrowed amount(s) shall be returned to Seller.

**(b) COSTS TO BE PAID BY BUYER:**

- Taxes and recording fees on notes and mortgages
- Recording fees for deed and financing statements
- Owner's Policy and Charges (if Paragraph 9(c)(ii) is checked)
- Survey (and elevation certification, if required)
- Lender's title policy and endorsements
- HOA/Condominium Association application/transfer fees
- Municipal lien search (if Paragraph 9(c)(ii) is checked)
- Other:

- Loan expenses
- Appraisal fees
- Buyer's Inspections
- Buyer's attorneys' fees
- All property related insurance
- Owner's Policy Premium (if Paragraph 9 (c)(iii) is checked.)

**(c) TITLE EVIDENCE AND INSURANCE:** At least _____ (if left blank, then 15, or if Paragraph 8(a) is checked then 5) days prior to Closing Date ("Title Evidence Deadline"), a title insurance commitment issued by a Florida licensed title insurer, with legible copies of instruments listed as exceptions attached thereto ("Title Commitment") and, after Closing, an owner's policy of title insurance (see STANDARD A for terms) shall be obtained and delivered to Buyer. If Seller has an owner's policy of title insurance covering the Real Property, a copy shall be furnished to Buyer and Closing Agent within 5 days after Effective Date. The owner's title policy premium, title search and closing services (collectively, "Owner's Policy and Charges") shall be paid, as set forth below. The title insurance premium charges for the owner's policy and any lender's policy will be calculated and allocated in accordance with Florida law, but may be reported differently on certain federally mandated closing disclosures and other closing documents. For purposes of this Contract "municipal lien search" means a search of records necessary for the owner's policy of title insurance to be issued without exception for unrecorded liens imposed pursuant to Chapters 159 or 170, F.S., in favor of any governmental body, authority or agency (CHECK ONE):

☒ (i) Seller shall designate Closing Agent and pay for Owner's Policy and Charges and Buyer shall pay the premium for Buyer's lender's policy and charges for closing services related to the lender's policy, endorsements and loan closing; which amounts shall be paid by Buyer to Closing Agent or such other provider(s) as Buyer may select; or

☐ (ii) Buyer shall designate Closing Agent and pay for Owner's Policy and Charges and charges for closing services related to Buyer's lender's policy, endorsements and loan closing; or

FloridaRealtors/FloridaBar-ASIS-5x   Rev.6/19 © 2017 Florida Realtors® and The Florida Bar. All rights reserved.

This software is licensed to Maryann Bozzeman · CENTURY 21 COAST TO COAST| www.transactiondesk.com.

Internal

Electronically Signed using eSignOnline™ | Session ID: 77/3f1581-462e-47e1-47c1-4970891e7327 |

Authentisign ID: 1B0491B1-CC1C-45F0-B7F1-7FAEAFAAA9AF

☐ (iii) [MIAMI-DADE/BROWARD REGIONAL PROVISION]: Seller shall furnish a copy of a prior owner's policy of title insurance or other evidence of title and pay fees for: (A) a continuation or update of such title evidence, which is acceptable to Buyer's title insurance underwriter for reissue of coverage; (B) tax search; and (C) municipal lien search, Buyer shall obtain and pay for post-Closing continuation and premium for Buyer's owner's policy, and if applicable, Buyer's lender's policy. Seller shall not be obligated to pay more than $ _____ (if left blank, then $200.00) for abstract continuation or title search ordered or performed by Closing Agent.

(d) SURVEY: On or before Title Evidence Deadline, Buyer may, at Buyer's expense, have the Real Property surveyed and certified by a registered Florida surveyor ("Survey"). If Seller has a survey covering the Real Property, a copy shall be furnished to Buyer and Closing Agent within 5 days after Effective Date.

(e) HOME WARRANTY: At Closing. ☐ Buyer ☒ Seller ☐ N/A shall pay for a home warranty plan issued by _____ at a cost not to exceed $ _____. A home warranty plan provides for repair or replacement of many of a home's mechanical systems and major built-in appliances in the event of breakdown due to normal wear and tear during the agreement's warranty period.

(f) SPECIAL ASSESSMENTS: At Closing, Seller shall pay: (i) the full amount of liens imposed by a public body ("public body" does not include a Condominium or Homeowner's Association) that are certified, confirmed and ratified before Closing; and (ii) the amount of the public body's most recent estimate or assessment for an improvement which is substantially complete as of Effective Date, but that has not resulted in a lien being imposed on the Property before Closing. Buyer shall pay all other assessments. If special assessments may be paid in installments (CHECK ONE):

☐ (a) Seller shall pay installments due prior to Closing and Buyer shall pay installments due after Closing. Installments prepaid or due for the year of Closing shall be prorated.

☐ (b) Seller shall pay the assessment(s) in full prior to or at the time of Closing.

IF NEITHER BOX IS CHECKED, THEN OPTION (a) SHALL BE DEEMED SELECTED.

This Paragraph 9(f) shall not apply to a special benefit tax lien imposed by a community development district (CDD) pursuant to Chapter 190, F.S. which lien shall be prorated pursuant to STANDARD K.

## DISCLOSURES

10. **DISCLOSURES:**

(a) RADON GAS: Radon is a naturally occurring radioactive gas that, when it is accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your county health department.

(b) PERMITS DISCLOSURE: Except as may have been disclosed by Seller to Buyer in a written disclosure, Seller does not know of any improvements made to the Property which were made without required permits or made pursuant to permits which have not been properly closed. If Seller identifies permits which have not been properly closed or improvements which were not permitted, then Seller shall promptly deliver to Buyer all plans, written documentation or other information in Seller's possession, knowledge, or control relating to improvements to the Property which are the subject of such open permits or unpermitted improvements.

(c) MOLD: Mold is naturally occurring and may cause health risks or damage to property. If Buyer is concerned or desires additional information regarding mold, Buyer should contact an appropriate professional.

(d) FLOOD ZONE; ELEVATION CERTIFICATION: Buyer is advised to verify by elevation certificate which flood zone the Property is in, whether flood insurance is required by Buyer's lender, and what restrictions apply to improving the Property and rebuilding in the event of casualty. If Property is in a "Special Flood Hazard Area" or "Coastal Barrier Resources Act" designated area or otherwise protected area identified by the U.S. Fish and Wildlife Service under the Coastal Barrier Resources Act and the lowest floor elevation for the building(s) and/or flood insurance rating purposes is below minimum flood elevation or is ineligible for flood insurance coverage through the National Flood Insurance Program or private flood insurance as defined in 42 U.S.C. §4012a, Buyer may terminate this Contract by delivering written notice to Seller within _____ (if left blank, then 20) days after Effective Date, and Buyer shall be refunded the Deposit thereby releasing Buyer and Seller from all further obligations under this Contract, failing which Buyer accepts existing elevation of buildings and flood zone designation of Property. The National Flood Insurance Program may assess additional fees or adjust premiums for pre-Flood Insurance Rate Map (pre-FIRM) non-primary structures (residential structures in which the insured or spouse does not reside for at least 50% of the year) and an elevation certificate may be required for actuarial rating.

(e) ENERGY BROCHURE: Buyer acknowledges receipt of Florida Energy-Efficiency Rating Information Brochure required by Section 553.996, F.S.

Buyer's Initials [JJ] [LD]   Page 4 of 12   Seller's Initials MCA  SLA

FloridaRealtors/FloridaBar-ASIS-5x   Rev.6-19 © 2017 Florida Realtors® and The Florida Bar. All rights reserved.

This software is licensed to [Maryann Spearman - CENTURY 21 COAST TO COAST] www.transactiondesk.com.

Electronically Signed using eSignOnline™ [ Session ID 7773981-659a-47a1-82a1-4970881c7587 ]

Authentisign ID: 19895101-CC10-40E0-97E1-79AEAFAAAAAF

(f) **LEAD-BASED PAINT:** If Property includes pre-1978 residential housing, a lead-based paint disclosure is mandatory.

(g) **HOMEOWNERS' ASSOCIATION/COMMUNITY DISCLOSURE: BUYER SHOULD NOT EXECUTE THIS CONTRACT UNTIL BUYER HAS RECEIVED AND READ THE HOMEOWNERS' ASSOCIATION/COMMUNITY DISCLOSURE, IF APPLICABLE.**

(h) **PROPERTY TAX DISCLOSURE SUMMARY: BUYER SHOULD NOT RELY ON THE SELLER'S CURRENT PROPERTY TAXES AS THE AMOUNT OF PROPERTY TAXES THAT THE BUYER MAY BE OBLIGATED TO PAY IN THE YEAR SUBSEQUENT TO PURCHASE. A CHANGE OF OWNERSHIP OR PROPERTY IMPROVEMENTS TRIGGERS REASSESSMENTS OF THE PROPERTY THAT COULD RESULT IN HIGHER PROPERTY TAXES. IF YOU HAVE ANY QUESTIONS CONCERNING VALUATION, CONTACT THE COUNTY PROPERTY APPRAISER'S OFFICE FOR INFORMATION.**

(i) **FOREIGN INVESTMENT IN REAL PROPERTY TAX ACT ("FIRPTA"):** Seller shall inform Buyer in writing if Seller is a "foreign person" as defined by the Foreign Investment in Real Property Tax Act ("FIRPTA"). Buyer and Seller shall comply with FIRPTA, which may require Seller to provide additional cash at Closing. If Seller is not a "foreign person", Seller can provide Buyer, at or prior to Closing, a certification of non-foreign status, under penalties of perjury, to inform Buyer and Closing Agent that no withholding is required. See STANDARD V for further information pertaining to FIRPTA. Buyer and Seller are advised to seek legal counsel and tax advice regarding their respective rights, obligations, reporting and withholding requirements pursuant to FIRPTA.

(j) **SELLER DISCLOSURE:** Seller knows of no facts materially affecting the value of the Real Property which are not readily observable and which have not been disclosed to Buyer. Except as provided for in the preceding sentence, Seller extends and intends no warranty and makes no representation of any type, either express or implied, as to the physical condition or history of the Property. Except as otherwise disclosed in writing Seller has received no written or verbal notice from any governmental entity or agency as to a currently uncorrected building, environmental or safety code violation.

**PROPERTY MAINTENANCE, CONDITION, INSPECTIONS AND EXAMINATIONS** 08/30/2019

**11. PROPERTY MAINTENANCE:** Except for ordinary wear and tear and Casualty Loss, Seller shall maintain the Property, including, but not limited to, lawn, shrubbery and pool, in the condition existing as of Effective Date ("AS IS Maintenance Requirement").            MCA    B    JPH   ALD

**12. PROPERTY INSPECTION: RIGHT TO CANCEL:**            SLA

(a) *PROPERTY INSPECTIONS AND RIGHT TO CANCEL: Buyer shall have __15__ (if left blank, then 15) days after Effective Date ("Inspection Period") within which to have such inspections of the Property performed as Buyer shall desire during the Inspection Period. If Buyer determines, in Buyer's sole discretion, that the Property is not acceptable to Buyer, Buyer may terminate this Contract by delivering written notice of such election to Seller prior to expiration of Inspection Period. If Buyer timely terminates this Contract, the Deposit paid shall be returned to Buyer, thereupon, Buyer and Seller shall be released of all further obligations under this Contract; however, Buyer shall be responsible for prompt payment for such inspections, for repair of damage to, and restoration of, the Property resulting from such inspections, and shall provide Seller with paid receipts for all work done on the Property (the preceding provision shall survive termination of this Contract). Unless Buyer exercises the right to terminate granted herein, Buyer accepts the physical condition of the Property and any violation of governmental, building, environmental, and safety codes, restrictions, or requirements, but subject to Seller's continuing AS IS Maintenance Requirement, and Buyer shall be responsible for any and all repairs and improvements required by Buyer's lender.*

(b) *WALK-THROUGH INSPECTION/RE-INSPECTION: On the day prior to Closing Date, or on Closing Date prior to time of Closing, as specified by Buyer, Buyer or Buyer's representative may perform a walk-through (and follow-up walk-through if necessary) inspection of the Property solely to confirm that all items of Personal Property are on the Property and to verify that Seller has maintained the Property as required by the AS IS Maintenance Requirement and has met all other contractual obligations.*

(c) *SELLER ASSISTANCE AND COOPERATION IN CLOSE-OUT OF BUILDING PERMITS: If Buyer's inspection of the Property identifies open or needed building permits, then Seller shall promptly deliver to Buyer all plans, written documentation or other information in Seller's possession, knowledge, or control relating to improvements to the Property which are the subject of such open or needed Permits, and shall promptly cooperate in good faith with Buyer's efforts to obtain estimates of repairs or other work necessary to resolve such Permit issues. Seller's obligation to cooperate shall include Seller's execution of necessary authorizations.*

FloridaRealtors/FloridaBar-ASIS-5x   Rev.6/19 © 2017 Florida Realtors® and The Florida Bar   All rights reserved

This software is licensed to (Maryann Spearman  -  CENTURY 21 COAST TO COAST) www.transactiondesk.com.            Instanet

Electronically Signed using eSignOnline™ [ Session ID: 7771ab14-69bc-47b1-87c1-4570331c7397 ]

Authentisign ID: 1E7161B1-CC16-49ED-B7E1-7BAFAEBAAAAF

consents, or other documents necessary for Buyer to conduct inspections and have estimates of such repairs or work prepared, but in fulfilling such obligation, Seller shall not be required to expend, or become obligated to expend, any money.

(d) **ASSIGNMENT OF REPAIR AND TREATMENT CONTRACTS AND WARRANTIES:** At Buyer's option and cost. Seller will, at Closing, assign all assignable repair, treatment and maintenance contracts and warranties to Buyer.

### ESCROW AGENT AND BROKER

13. **ESCROW AGENT:** Any Closing Agent or Escrow Agent (collectively "Agent") receiving the Deposit, other funds and other items is authorized, and agrees by acceptance of them to deposit them promptly, hold same in escrow within the State of Florida and, subject to COLLECTION, disburse them in accordance with terms and conditions of this Contract. Failure of funds to become **COLLECTED** shall not excuse Buyer's performance. When conflicting demands for the Deposit are received  or Agent has a good faith doubt as to entitlement to the Deposit, Agent may take such actions permitted by this Paragraph 13, as Agent deems advisable. If in doubt as to Agent's duties or liabilities under this Contract, Agent may, at Agent's option, continue to hold the subject matter of the escrow until the parties agree to its disbursement or until a final judgment of a court of competent jurisdiction shall determine the rights of the parties, or Agent may deposit same with the clerk of the circuit court having jurisdiction of the dispute. An attorney who represents a party and also acts as Agent may represent such party in such action. Upon notifying all parties concerned of such action. all liability on the part of Agent shall fully terminate, except to the extent of accounting for any items previously delivered out of escrow. If a licensed real estate broker, Agent will comply with provisions of Chapter 475, F.S., as amended and FREC rules to timely resolve escrow disputes through mediation, arbitration, interpleader or an escrow disbursement order.

In any proceeding between Buyer and Seller wherein Agent is made a party because of acting as Agent hereunder, or in any proceeding where Agent interpleads the subject matter of the escrow, Agent shall recover reasonable attorney's fees and costs incurred, to be paid pursuant to court order out of the escrowed funds or equivalent. Agent shall not be liable to any party or person for mis-delivery of any escrowed items, unless such mis-delivery is due to Agent's willful breach of this Contract or Agent's gross negligence. This Paragraph 13 shall survive Closing or termination of this Contract.

14. **PROFESSIONAL ADVICE; BROKER LIABILITY:** Broker advises Buyer and Seller to verify Property condition, square footage, and all other facts and representations made pursuant to this Contract and to consult appropriate professionals for legal, tax  environmental, and other specialized advice concerning matters affecting the Property and the transaction contemplated by this Contract. Broker represents to Buyer that Broker does not reside on the Property and that all representations (oral, written or otherwise) by Broker are based on Seller representations or public records. **BUYER AGREES TO RELY SOLELY ON SELLER; PROFESSIONAL INSPECTORS AND GOVERNMENTAL AGENCIES FOR VERIFICATION OF PROPERTY CONDITION, SQUARE FOOTAGE AND FACTS THAT MATERIALLY AFFECT PROPERTY VALUE AND NOT ON THE REPRESENTATIONS (ORAL, WRITTEN OR OTHERWISE) OF BROKER.** Buyer and Seller (individually, the "Indemnifying Party") each individually indemnifies  holds harmless, and releases Broker and Broker's officers, directors, agents and employees from all liability for loss or damage, including all costs and expenses, and reasonable attorney's fees at all levels, suffered or incurred by Broker and Broker's officers, directors, agents and employees in connection with or arising from claims, demands or causes of action instituted by Buyer or Seller based on; (i) inaccuracy of information provided by the Indemnifying Party or from public records; (ii) Indemnifying Party's misstatement(s) or failure to perform contractual obligations; (iii) Broker's performance  at Indemnifying Party's request, of any task beyond the scope of services regulated by Chapter 475, F.S., as amended; including Broker's referral, recommendation or retention of any vendor for, or on behalf of, Indemnifying Party; (iv) products or services provided by any such vendor for, or on behalf of, Indemnifying Party  and (v) expenses incurred by any such vendor. Buyer and Seller each assumes full responsibility for selecting and compensating their respective vendors and paying their other costs under this Contract whether or not this transaction closes. This Paragraph 14 will not relieve Broker of statutory obligations under Chapter 475, F.S., as amended. For purposes of this Paragraph 14, Broker will be treated as a party to this Contract. This Paragraph 14 shall survive Closing or termination of this Contract.

### DEFAULT AND DISPUTE RESOLUTION

15. **DEFAULT:**

(a) **BUYER DEFAULT:** If Buyer fails, neglects or refuses to perform Buyer's obligations under this Contract, including payment of the Deposit, within the time(s) specified, Seller may elect to recover and retain the Deposit for the account of Seller as agreed upon liquidated damages, consideration for execution of this Contract, and in full settlement of any claims, whereupon Buyer and Seller shall be relieved from all further obligations under

Buyer's initials [JSK] [ALD]          Page 6 of 12          Seller's initials MCA  SLA
FloridaRealtors/FloridaBar-ASIS-5x   Rev.3-19 © 2017 Florida Realtors® and The Florida Bar. All rights reserved.

This software is Licensed to (Maryann Spearman - CENTURY 21 COAST TO COAST) www.transactiondesk.com.          Instanet

Electronically Signed using eSignOnline™ [ Session ID : 7721ba31-859a-47a1-82c1-49705310c7337 ]

Authentisign ID: 19858101-CC16-49ED-97E1-70AFAFAAAAAF

this Contract, or Seller, at Seller's option, may, pursuant to Paragraph 16, proceed in equity to enforce Seller's rights under this Contract. The portion of the Deposit, if any, paid to Listing Broker upon default by Buyer, shall be split equally between Listing Broker and Cooperating Broker, provided however, Cooperating Broker's share shall not be greater than the commission amount Listing Broker had agreed to pay to Cooperating Broker.

(b) **SELLER DEFAULT:** If for any reason other than failure of Seller to make Seller's title marketable after reasonable diligent effort, Seller fails, neglects or refuses to perform Seller's obligations under this Contract, Buyer may elect to receive return of Buyer's Deposit without thereby waiving any action for damages resulting from Seller's breach, and, pursuant to Paragraph 16, may seek to recover such damages or seek specific performance.

This Paragraph 15 shall survive Closing or termination of this Contract.

16. **DISPUTE RESOLUTION:** Unresolved controversies, claims and other matters in question between Buyer and Seller arising out of, or relating to, this Contract or its breach, enforcement or interpretation ("Dispute") will be settled as follows:

(a) Buyer and Seller will have 10 days after the date conflicting demands for the Deposit are made to attempt to resolve such Dispute, failing which, Buyer and Seller shall submit such Dispute to mediation under Paragraph 16(b).

(b) Buyer and Seller shall attempt to settle Disputes in an amicable manner through mediation pursuant to Florida Rules for Certified and Court-Appointed Mediators and Chapter 44 F.S., as amended (the 'Mediation Rules'). The mediator must be certified or must have experience in the real estate industry. Injunctive relief may be sought without first complying with this Paragraph 16(b). Disputes not settled pursuant to this Paragraph 16 may be resolved by instituting action in the appropriate court having jurisdiction of the matter. This Paragraph 16 shall survive Closing or termination of this Contract.

17. **ATTORNEY'S FEES; COSTS:** The parties will split equally any mediation fee incurred in any mediation permitted by this Contract, and each party will pay their own costs, expenses and fees, including attorney's fees, incurred in conducting the mediation. In any litigation permitted by this Contract, the prevailing party shall be entitled to recover from the non-prevailing party costs and fees, including reasonable attorney's fees, incurred in conducting the litigation. This Paragraph 17 shall survive Closing or termination of this Contract.

<div align="center">STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS")</div>

18. **STANDARDS:**

**A. TITLE:**

(i) **TITLE EVIDENCE; RESTRICTIONS; EASEMENTS; LIMITATIONS:** Within the time period provided in Paragraph 9(c), the Title Commitment, with legible copies of instruments listed as exceptions attached thereto, shall be issued and delivered to Buyer. The Title Commitment shall set forth those matters to be discharged by Seller at or before Closing and shall provide that, upon recording of the deed to Buyer, an owner's policy of title insurance in the amount of the Purchase Price, shall be issued to Buyer insuring Buyer's marketable title to the Real Property, subject only to the following matters: (a) comprehensive land use plans, zoning, and other land use restrictions, prohibitions and requirements imposed by governmental authority; (b) restrictions and matters appearing on the Plat or otherwise common to the subdivision, (c) outstanding oil, gas and mineral rights of record without right of entry; (d) unplatted public utility easements of record (located contiguous to real property lines and not more than 10 feet in width as to rear or front lines and 7 1/2 feet in width as to side lines); (e) taxes for year of Closing and subsequent years; and (f) assumed mortgages and purchase money mortgages, if any (if additional items, attach addendum); provided, that, none prevent use of Property for **RESIDENTIAL PURPOSES.** If there exists at Closing any violation of items identified in (b) – (f) above, then the same shall be deemed a title defect. Marketable title shall be determined according to applicable Title Standards adopted by authority of The Florida Bar and in accordance with law.

(ii) **TITLE EXAMINATION:** Buyer shall have 5 days after receipt of Title Commitment to examine it and notify Seller in writing specifying defect(s), if any, that render title unmarketable. If Seller provides Title Commitment and it is delivered to Buyer less than 5 days prior to Closing Date, Buyer may extend Closing for up to 5 days after date of receipt to examine same in accordance with this STANDARD A. Seller shall have 30 days ("Cure Period") after receipt of Buyer's notice to take reasonable diligent efforts to remove defects. If Buyer fails to so notify Seller, Buyer shall be deemed to have accepted title as it then is. If Seller cures defects within Cure Period, Seller will deliver written notice to Buyer (with proof of cure acceptable to Buyer and Buyer's attorney) and the parties will close this Contract on Closing Date (or if Closing Date has passed, within 10 days after Buyer's receipt of Seller's notice). If Seller is unable to cure defects within Cure Period, then Buyer may, within 5 days after expiration of Cure Period

This software is licensed to [Maryann Spearman - CENTURY 21 COAST TO COAST] www.transactiondesk.com.

Electronically Signed using eSignOnline™ [ Session ID : 7773a31-538e-47a1-52a1-497035107397 ]

Authentisign ID: 1996F1D1-CC16-49ED-B7E1-7BAEAEAAAAAF

## STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED

deliver written notice to Seller: (a) extending Cure Period for a specified period not to exceed 120 days within which Seller shall continue to use reasonable diligent effort to remove or cure the defects ( Extended Cure Period ); or (b) electing to accept title with existing defects and close this Contract on Closing Date (or if Closing Date has passed, within the earlier of 10 days after end of Extended Cure Period or Buyer's receipt of Seller's notice), or (c) electing to terminate this Contract and receive a refund of the Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract. If after reasonable diligent effort, Seller is unable to timely cure defects, and Buyer does not waive the defects, this Contract shall terminate, and Buyer shall receive a refund of the Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract.

**B. SURVEY:** If Survey discloses encroachments on the Real Property or that improvements located thereon encroach on setback lines, easements, or lands of others, or violate any restrictions, covenants, or applicable governmental regulations described in STANDARD A (i)(a), (b) or (d) above, Buyer shall deliver written notice of such matters, together with a copy of Survey, to Seller within 5 days after Buyer's receipt of Survey, but no later than Closing. If Buyer timely delivers such notice and Survey to Seller, such matters identified in the notice and Survey shall constitute a title defect, subject to cure obligations of STANDARD A above. If Seller has delivered a prior survey, Seller shall, at Buyer's request execute an affidavit of 'no change' to the Real Property since the preparation of such prior survey, to the extent the affirmations therein are true and correct.

**C. INGRESS AND EGRESS:** Seller represents that there is ingress and egress to the Real Property and title to the Real Property is insurable in accordance with STANDARD A without exception for lack of legal right of access.

**D. LEASE INFORMATION:** Seller shall, at least 10 days prior to Closing, furnish to Buyer estoppel letters from tenant(s)/occupant(s) specifying nature and duration of occupancy, rental rates, advanced rent and security deposits paid by tenant(s) or occupant(s)("Estoppel Letter(s) ). If Seller is unable to obtain such Estoppel Letter(s) the same information shall be furnished by Seller to Buyer within that time period in the form of a Seller's affidavit and Buyer may thereafter contact tenant(s) or occupant(s) to confirm such information. If Estoppel Letter(s) or Seller's affidavit, if any, differ materially from Seller's representations and lease(s) provided pursuant to Paragraph 6, or if tenant(s)/occupant(s) fail or refuse to confirm Seller's affidavit, Buyer may deliver written notice to Seller within 5 days after receipt of such information, but no later than 5 days prior to Closing Date, terminating this Contract and receive a refund of the Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract. Seller shall, at Closing, deliver and assign all leases to Buyer who shall assume Seller's obligations thereunder.

**E. LIENS:** Seller shall furnish to Buyer at Closing an affidavit attesting: (i) to the absence of any financing statement, claims of lien or potential lienors known to Seller and (ii) that there have been no improvements or repairs to the Real Property for 90 days immediately preceding Closing Date. If the Real Property has been improved or repaired within that time, Seller shall deliver releases or waivers of construction liens executed by all general contractors, subcontractors, suppliers and materialmen in addition to Seller's lien affidavit setting forth names of all such general contractors, subcontractors, suppliers and materialmen, further affirming that all charges for improvements or repairs which could serve as a basis for a construction lien or a claim for damages have been paid or will be paid at Closing.

**F. TIME:** Calendar days shall be used in computing time periods. Time is of the essence in this Contract. Other than time for acceptance and Effective Date as set forth in Paragraph 3, any time periods provided for or dates specified in this Contract, whether preprinted, handwritten, typewritten or inserted herein, which shall end or occur on a Saturday, Sunday, or a national legal holiday (see 5 U.S.C. 6103) shall extend to 5:00 p.m. (where the Property is located) of the next business day.

**G. FORCE MAJEURE:** Buyer or Seller shall not be required to perform any obligation under this Contract or be liable to each other for damages so long as performance or non-performance of the obligation, or the availability of services, insurance or required approvals essential to Closing, is disrupted, delayed, caused or prevented by Force Majeure. "Force Majeure" means: hurricanes, floods, extreme weather, earthquakes, fire or other acts of God, unusual transportation delays, or wars, insurrections, or acts of terrorism, which, by exercise of reasonable diligent effort, the non-performing party is unable in whole or in part to prevent or overcome. All time periods, including Closing Date, will be extended a reasonable time up to 7 days after the Force Majeure no longer prevents performance under this Contract, provided, however, if such Force Majeure continues to prevent performance under this Contract more than 30 days beyond Closing Date, then either party may terminate this Contract by delivering written notice to the other and the Deposit shall be refunded to Buyer, thereby releasing Buyer and Seller from all further obligations under this Contract.

**H. CONVEYANCE:** Seller shall convey marketable title to the Real Property by statutory warranty, trustee's, personal representative's, or guardian's deed, as appropriate to the status of Seller, subject only to matters described in STANDARD A and those accepted by Buyer. Personal Property shall, at request of Buyer, be

FloridaRealtors FloridaBar-ASIS-5x   Rev. 6/19 © 20:7 Florida Realtors and The Florida Bar  All rights reserved

This software is licensed to [Maryann Spurman]   CENTURY 21 COAST TO COAST| www.transportationdesk.com.

Electronically Signed using eSignOnline™ [ Session ID : 77716a1-89b-47a1-82c1-4970891c2397 ]

Authentisign ID: 483FF1B1-E5F0-49F0-B7G1-7BA5AFCAAAAF

## STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED

transferred by absolute bill of sale with warranty of title, subject only to such matters as may be provided for in this Contract

### I. CLOSING LOCATION; DOCUMENTS; AND PROCEDURE:

(i) **LOCATION:** Closing will be conducted by the attorney or other closing agent ("Closing Agent") designated by the party paying for the owner's policy of title insurance and will take place in the county where the Real Property is located at the office of the Closing Agent, or at such other location agreed to by the parties. If there is no title insurance, Seller will designate Closing Agent. Closing may be conducted by mail, overnight courier, or electronic means.

(ii) **CLOSING DOCUMENTS:** Seller shall at or prior to Closing, execute and deliver, as applicable, deed, bill of sale, certificate(s) of title or other documents necessary to transfer title to the Property, construction lien affidavit(s), owner's possession and no lien affidavit(s), and assignment(s) of leases. Seller shall provide Buyer with paid receipts for all work done on the Property pursuant to this Contract. Buyer shall furnish and pay for, as applicable, the survey, flood elevation certification, and documents required by Buyer's lender.

(iii) **FinCEN GTO NOTICE.** If Closing Agent is required to comply with the U.S. Treasury Department's Financial Crimes Enforcement Network ("FinCEN") Geographic Targeting Orders ("GTOs"), then Buyer shall provide Closing Agent with the information related to Buyer and the transaction contemplated by this Contract that is required to complete IRS Form 8300, and Buyer consents to Closing Agent's collection and report of said information to IRS.

(iv) **PROCEDURE:** The deed shall be recorded upon **COLLECTION** of all closing funds. If the Title Commitment provides insurance against adverse matters pursuant to Section 627.7841, F.S., as amended, the escrow closing procedure required by STANDARD J shall be waived, and Closing Agent shall, subject to **COLLECTION** of all closing funds, disburse at Closing the brokerage fees to Broker and the net sale proceeds to Seller.

**J. ESCROW CLOSING PROCEDURE:** If Title Commitment issued pursuant to Paragraph 9(c) does not provide for insurance against adverse matters as permitted under Section 627.7841 F.S., as amended, the following escrow and closing procedures shall apply. (1) all Closing proceeds shall be held in escrow by the Closing Agent for a period of not more than 10 days after Closing; (2) if Seller's title is rendered unmarketable, through no fault of Buyer, Buyer shall, within the 10 day period, notify Seller in writing of the defect and Seller shall have 30 days from date of receipt of such notification to cure the defect; (3) if Seller fails to timely cure the defect, the Deposit and all Closing funds paid by Buyer shall  within 5 days after written demand by Buyer, be refunded to Buyer and, simultaneously with such repayment, Buyer shall return the Personal Property, vacate the Real Property and re-convey the Property to Seller by special warranty deed and bill of sale; and (4) if Buyer fails to make timely demand for refund of the Deposit, Buyer shall take title as is, waiving all rights against Seller as to any intervening defect except as may be available to Buyer by virtue of warranties contained in the deed or bill of sale.

**K. PRORATIONS; CREDITS:** The following recurring items will be made current (if applicable) and prorated as of the day prior to Closing Date, or date of occupancy if occupancy occurs before Closing Date: real estate taxes (including special benefit tax assessments imposed by a CDD), interest, bonds, association fees, insurance, rents and other expenses of Property. Buyer shall have option of taking over existing policies of insurance, if assumable, in which event premiums shall be prorated. Cash at Closing shall be increased or decreased as may be required by prorations to be made through day prior to Closing. Advance rent and security deposits, if any, will be credited to Buyer. Escrow deposits held by Seller's mortgagee will be paid to Seller. Taxes shall be prorated based on current year's tax. If Closing occurs on a date when current year's millage is not fixed but current year's assessment is available, taxes will be prorated based upon such assessment and prior year's millage. If current year's assessment is not available then taxes will be prorated on prior year's tax. If there are completed improvements on the Real Property by January 1st of year of Closing, which improvements were not in existence on January 1st of prior year, then taxes shall be prorated based upon prior year's millage and at an equitable assessment to be agreed upon between the parties, failing which, request shall be made to the County Property Appraiser for an informal assessment taking into account available exemptions. In all cases, due allowance shall be made for the maximum allowable discounts and applicable homestead and other exemptions.  A tax proration based on an estimate shall, at either party's request, be readjusted upon receipt of current year's tax bill. This STANDARD K shall survive Closing.

**L. ACCESS TO PROPERTY TO CONDUCT APPRAISALS, INSPECTIONS, AND WALK-THROUGH:** Seller shall, upon reasonable notice, provide utilities service and access to Property for appraisals and inspections, including a walk-through (or follow-up walk-through if necessary) prior to Closing.

**M. RISK OF LOSS:** If, after Effective Date, but before Closing, Property is damaged by fire or other casualty ("Casualty Loss") and cost of restoration (which shall include cost of pruning or removing damaged trees) does not exceed 1.5% of Purchase Price, cost of restoration shall be an obligation of Seller and Closing shall proceed pursuant to terms of this Contract. If restoration is not completed as of Closing, a sum equal to 125% of estimated

This software is licensed to [Maryann Spearman - CENTURY 21 COAST TO COAST] www.transactiondesk.com.

Electronically Signed using eSignOnline™ | Session ID : f773b31-632e47a1-87e1-457089fc73b7 |     [ Home ]

Authentisign ID: 1890101-CC1C-40E0-87E1-7BAE6EAAAAAF

## STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED

cost to complete restoration (not to exceed 1.5% of Purchase Price) will be escrowed at Closing. If actual cost of restoration exceeds escrowed amount, Seller shall pay such actual costs (but, not in excess of 1.5% of Purchase Price). Any unused portion of escrowed amount shall be returned to Seller. If cost of restoration exceeds 1.5% of Purchase Price, Buyer shall elect to either take Property 'as is' together with the 1.5%, or receive a refund of the Deposit thereby releasing Buyer and Seller from all further obligations under this Contract. Seller's sole obligation with respect to tree damage by casualty or other natural occurrence shall be cost of pruning or removal.

**N. 1031 EXCHANGE:** If either Seller or Buyer wish to enter into a like-kind exchange (either simultaneously with Closing or deferred) under Section 1031 of the Internal Revenue Code ("Exchange"), the other party shall cooperate in all reasonable respects to effectuate the Exchange, including execution of documents; provided, however, cooperating party shall incur no liability or expense related to the Exchange, and Closing shall not be contingent upon, nor extended or delayed by, such Exchange.

**O. CONTRACT NOT RECORDABLE; PERSONS BOUND; NOTICE; DELIVERY; COPIES; CONTRACT EXECUTION:** Neither this Contract nor any notice of it shall be recorded in any public records. This Contract shall be binding on, and inure to the benefit of, the parties and their respective heirs or successors in interest. Whenever the context permits, singular shall include plural and one gender shall include all. Notice and delivery given by or to the attorney or broker (including such broker's real estate licensee) representing any party shall be as effective as if given by or to that party. All notices must be in writing and may be made by mail, personal delivery or electronic (including "pdf") media. A facsimile or electronic (including "pdf") copy of this Contract and any signatures hereon shall be considered for all purposes as an original. This Contract may be executed by use of electronic signatures, as determined by Florida's Electronic Signature Act and other applicable laws.

**P. INTEGRATION; MODIFICATION:** This Contract contains the full and complete understanding and agreement of Buyer and Seller with respect to the transaction contemplated by this Contract and no prior agreements or representations shall be binding upon Buyer or Seller unless included in this Contract. No modification to or change in this Contract shall be valid or binding upon Buyer or Seller unless in writing and executed by the parties intended to be bound by it.

**Q. WAIVER:** Failure of Buyer or Seller to insist on compliance with, or strict performance of, any provision of this Contract or to take advantage of any right under this Contract, shall not constitute a waiver of other provisions or rights.

**R. RIDERS; ADDENDA; TYPEWRITTEN OR HANDWRITTEN PROVISIONS:** Riders, addenda, and typewritten or handwritten provisions shall control all printed provisions of this Contract in conflict with them.

**S. COLLECTION or COLLECTED:** "COLLECTION" or "COLLECTED" means any checks tendered or received, including Deposits, have become actually and finally collected and deposited in the account of Escrow Agent or Closing Agent. Closing and disbursement of funds and delivery of closing documents may be delayed by Closing Agent until such amounts have been COLLECTED in Closing Agent's accounts.

**T. RESERVED.**

**U. APPLICABLE LAW AND VENUE:** This Contract shall be construed in accordance with the laws of the State of Florida and venue for resolution of all disputes, whether by mediation, arbitration or litigation, shall be in the county where the Real Property is located.

**V. FIRPTA TAX WITHHOLDING:** If a seller of U.S. real property is a 'foreign person' as defined by FIRPTA, Section 1445 of the Internal Revenue Code ("Code") requires the buyer of the real property to withhold up to 15% of the amount realized by the seller on the transfer and remit the withheld amount to the Internal Revenue Service (IRS) unless an exemption to the required withholding applies or the seller has obtained a Withholding Certificate from the IRS authorizing a reduced amount of withholding.

(i)  No withholding is required under Section 1445 of the Code if the Seller is not a 'foreign person'. Seller can provide proof of non-foreign status to Buyer by delivery of written certification signed under penalties of perjury, stating that Seller is not a foreign person and containing Seller's name, U.S. taxpayer identification number and name address (or office address, in the case of an entity), as provided for in 26 CFR 1 1445-2(b). Otherwise, Buyer shall withhold the applicable percentage of the amount realized by Seller on the transfer and timely remit said funds to the IRS.

(ii)  If Seller is a foreign person and has received a Withholding Certificate from the IRS which provides for reduced or eliminated withholding in this transaction and provides same to Buyer by Closing, then Buyer shall withhold the reduced sum required, if any, and timely remit said funds to the IRS.

(iii)  If prior to Closing Seller has submitted a completed application to the IRS for a Withholding Certificate and has provided to Buyer the notice required by 26 CFR 1 1445-1(c) (2)(i)(B) but no Withholding Certificate has been received as of Closing, Buyer shall, at Closing, withhold the applicable percentage of the amount realized by Seller on the transfer and, at Buyer's option, either (a) timely remit the withheld funds to the IRS or (b) place the funds in escrow, at Seller's expense, with an escrow agent selected by Buyer and pursuant to terms negotiated by the

Buyer's Initials [JMA] [ALD]                                    Page 10 of 12                            Seller's Initials MCA SLA

FloridaRealtors/FloridaBar-ASIS-5x   Rev 6/19 © 2017 Florida Realtors® and The Florida Bar   All rights reserved

This software is licensed to (Maryann Spearman - CENTURY 21 COAST TO COAST) www.transactiondesk.com.

Instanet

Electronically Signed using eSignOnline™ [ Session ID : 77731a51-03e-47a1-02c1-4570531e7397 ]

AuthentIsign ID: 189581D1-CC18-49E0-8751-Z0AEAFAAAAAF

## STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED

parties, to be subsequently disbursed in accordance with the Withholding Certificate issued by the IRS or remitted directly to the IRS if the Seller's application is rejected or upon terms set forth in the escrow agreement.

(iv) In the event the net proceeds due Seller are not sufficient to meet the withholding requirement(s) in this transaction, Seller shall deliver to Buyer, at Closing, the additional COLLECTED funds necessary to satisfy the applicable requirement and thereafter Buyer shall timely remit said funds to the IRS or escrow the funds for disbursement in accordance with the final determination of the IRS, as applicable.

(v) Upon remitting funds to the IRS pursuant to this STANDARD, Buyer shall provide Seller copies of IRS Forms 8288 and 8288-A, as filed.

W. RESERVED

X. BUYER WAIVER OF CLAIMS: *To the extent permitted by law, Buyer waives any claims against Seller and against any real estate licensee involved in the negotiation of this Contract for any damage or defects pertaining to the physical condition of the Property that may exist at Closing of this Contract and be subsequently discovered by the Buyer or anyone claiming* by, through, under or against the Buyer. *This provision does not relieve Seller's obligation to comply with Paragraph 10(j). This Standard X shall survive Closing.*

## ADDENDA AND ADDITIONAL TERMS

**19. ADDENDA:** The following additional terms are included in the attached addenda or riders and incorporated into this Contract **(Check if applicable)**:

- [X] A. Condominium Rider
- [ ] B. Homeowners' Assn.
- [ ] C. Seller Financing
- [ ] D. Mortgage Assumption
- [ ] E. FHA/VA Financing
- [ ] F. Appraisal Contingency
- [ ] G. Short Sale
- [ ] H. Homeowners/Flood Ins.
- [ ] I. RESERVED
- [ ] J. Interest-Bearing Acct.
- [ ] K. RESERVED
- [ ] L. RESERVED
- [ ] M. Defective Drywall
- [ ] N. Coastal Construction Control Line
- [ ] O. Insulation Disclosure
- [X] P. Lead Paint Disclosure (Pre-1978)
- [X] Q. Housing for Older Persons
- [ ] R. Rezoning
- [ ] S. Lease Purchase/ Lease Option
- [ ] T. Pre-Closing Occupancy
- [ ] U. Post-Closing Occupancy
- [ ] V. Sale of Buyer's Property
- [ ] W. Back-up Contract
- [ ] X. Kick-out Clause
- [ ] Y. Seller's Attorney Approval
- [ ] Z. Buyer's Attorney Approval
- [ ] AA. Licensee Property Interest
- [ ] BB. Binding Arbitration
- [ ] CC. Miami-Dade County Special Taxing District Disclosure
- [ ] Other

**20. ADDITIONAL TERMS:**

## COUNTER-OFFER/REJECTION

- [ ] Seller counters Buyer's offer (to accept the counter-offer, Buyer must sign or initial the counter-offered terms and deliver a copy of the acceptance to Seller).
- [ ] Seller rejects Buyer's offer

Buyer's Initials JJH ALD Page 11 of 12 Seller's Initials MCA SLA

This software is licensed to [Maryann Spearman - CENTURY 21 COAST TO COAST] www.transactiondesk.com. Instanet

Electronically Signed using eSignOnline™ [ Session ID : 7773fa81-f59b-47e1-82c1-4870891c7397 ]

Authentisign ID: 18560101-CC28-40FB-97E1-7DAEAEAAA4AF

THIS IS INTENDED TO BE A LEGALLY BINDING CONTRACT. IF NOT FULLY UNDERSTOOD, SEEK THE ADVICE OF AN ATTORNEY PRIOR TO SIGNING.

THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR.

*Approval of this form by the Florida Realtors and The Florida Bar does not constitute an opinion that any of the terms and conditions in this Contract should be accepted by the parties in a particular transaction. Terms and conditions should be negotiated based upon the respective interests, objectives and bargaining positions of all interested persons.*

AN ASTERISK (*) FOLLOWING A LINE NUMBER IN THE MARGIN INDICATES THE LINE CONTAINS A BLANK TO BE COMPLETED.

Buyer: JOHN P HAINES          Date: 06-29-2019

Buyer: ARMAND LH DAUBY          Date: 06-29-2019

Seller: Martha C Alexander          MARTHA C ALEXANDER          Date: 06/29/2019 7:04 PM EDT

Seller: Stephen Alexander          STEPHEN G MARTHA ALEXANDER          Date: 06/29/2019 7:00 PM EDT

Buyer's address for purposes of notice          Seller's address for purposes of notice
J. Edwards/G. Williams
Dean & DeWitt Properties

BROKER: Listing and Cooperating Brokers, if any, named below (collectively, "Broker"), are the only Brokers entitled to compensation in connection with this Contract. Instruction to Closing Agent: Seller and Buyer direct Closing Agent to disburse at Closing the full amount of the brokerage fees as specified in separate brokerage agreements with the parties and cooperative agreements between the Brokers, except to the extent Broker has retained such fees from the escrowed funds. This Contract shall not modify any MLS or other offer of compensation made by Seller or Listing Broker to Cooperating Brokers.

Maryann Spearman          Glennis G Williams/John Dauby LHS
Cooperating Sales Associate, if any          Listing Sales Associate

CENTURY 21 COAST TO COAST          DEAN & DEWITT PROPERTIES
Cooperating Broker, if any          Listing Broker

Electronically Signed Using eSignOnline™ [ Session ID : 77/3391-639-47a1-42c1-497fa91c7397 ]

# EXHIBIT B

# Fidelity National Title of Florida, Inc.
## License #: A090982
3401 4th Street N, St Petersburg FL 33704
Phone: (727)906-5100 | Fax (727)498-7397

## BUYER'S STATEMENT

| | |
|---|---|
| Settlement Date: July 30, 2019 | Escrow Number: FTPA19-7567 |
| Disbursement Date: July 30, 2019 | Escrow Officer: Poly Oehrt |
| | Email: pdehrs@fnf.com |

Buyer: John P. Haines

Buyer: Armand LH Daupy

Seller: Stephen Alexander and Martha Alexander

Property: 7400 Sun Island Dr, #605
South Pasadena, FL 33707

| | $ DEBITS $ | CREDITS |
|---|---|---|
| **FINANCIAL CONSIDERATION** | | |
| Sale Price of Property | | |
| Deposit of earnest money | | |
| Deposit | | |
| **PRORATIONS/ADJUSTMENTS** | | |
| HOA Proration / Credit Seller Monthly 07/30/19-07/31/19 ($560.97 / 31 X 2 days) at $559.97 | | |
| Seller Cr Balance with HOA | | |
| County Taxes at $3,008.39 01/01/19 to 07/30/19 ($3,008.39 / 365 X 210 days) | | |
| **TITLE & ESCROW CHARGES** | | |
| Title - Closing Fee     Fidelity National Title of Florida, Inc | 300.00 | |
| Title - Recording to Simp File     Pinellas County Clerk of Court | | |
| **GOVERNMENT CHARGES** | | |
| Recording Fees     Pinellas County Clerk of Court | | |
| **HOA CHARGES** | | |
| August Maintenance Fee Jues Cr.     Sun Island Association, Inc. catania | | |
| **Subtotals** | | |
| **Balance Due FROM Buyer** | | |
| **TOTALS** | | |

The undersigned hereby certify that they have carefully reviewed the Closing Disclosure or other settlement statement, forms, and they approve and agree to the payment of all fees, costs, expenses and disbursement as reflected on the Closing Disclosure or other settlement statement form to be paid on their behalf. We further certify that we have received a copy of the Closing Disclosure or other settlement statement.

BUYER:

_John P. Haines_

_Armand LH Daupy_

I have reviewed the Closing Disclosure, the settlement statement, the lender's closing instructions and any and all other forms relating to the funds held in escrow including any disclosure of the Florida title insurance premiums being paid, and I agree to disburse the escrow funds in accordance with the terms of this transaction and Florida law.

Fidelity National Title of Florida, Inc
Poly Oehrt
License Number: A090982