## UNITED STATE DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| JOHN P. HAINES, individually and on behalf of all others similarly situated, | Case No. 8:19-cv-02995 |
| *Plaintiff,* | |
| | JURY TRIAL DEMANDED |
| v. | |
| FIDELITY NATIONAL TITLE OF FLORIDA, INC., | |
| *Defendant.* | |

## DEFENDANT FIDELITY NATIONAL TITLE OF FLORIDA, INC.'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Defendant Fidelity National Title of Florida, Inc. ("Fidelity"), pursuant to Federal Rule of Civil Procedure 12 hereby serves its Answer and Affirmative Defenses to Plaintiff John P. Haines' First Amended Class Action Complaint, referred to hereafter as the "Amended Complaint." (D.E. 4).

1.      The first paragraph of the Amended Complaint consists of Plaintiff's own characterization of his claims.  To the extent any response is required, Fidelity denies that the closing fees referred to in the Amended Complaint were "improperly charged and collected." Fidelity further denies that it has acted improperly towards Plaintiff in any way or that Plaintiff is entitled to any relief.

2.      In the second paragraph of the Amended Complaint, Plaintiff alleges that he has brought this action on his own behalf and also on behalf of a class of similarly situated real estate buyers pursuant to Federal Rule of Civil Procedure 23, however no class has yet

been certified.   To the extent any responses is required, Fidelity denies that class

certification under Rule 23 is appropriate either now or in the future.

## THE PARTIES, JURISDICTION AND VENUE

3.      Admitted.

4.      Admitted.

5.      Admitted in part and Denied, as phrased, in part.  Fidelity is without

knowledge concerning the total number of members of Plaintiff's proposed class.  However,

Fidelity's investigation discloses that there were 25,187 transactions that could potentially

fall within the parameters of Plaintiff's proposed class definition.   Fidelity does not admit

that the proposed class should be certified.  The remaining allegations of Paragraph 5 are

admitted.

6.      Admitted.

7.      Admitted that venue is proper in this Court pursuant to 28. U.S.C. § 1391(b),

that Defendant conducts business in Pinellas County, Florida and that the alleged conduct

giving rise to Plaintiff's claims occurred in Pinellas County, Florida.  Otherwise denied.

8.      Denied

## FACTS COMMON TO ALL COUNTS

9.      Admitted.

10.     Admitted.

11.     Admitted.

12.     Admitted.

13.     Admitted. However, Plaintiff has restated portions of the contract at issue and added highlights and emphasis on certain points, which are not found on the original.

14.     Paragraph 14 of the Amended Complaint contains Plaintiff's characterization of a contract (D.E. 4-1), which is attached to and incorporated by reference into the Amended Complaint pursuant to Federal of Civil Procedure 10(c).  The contract speaks for itself. Fidelity denies that Plaintiff has accurately stated the terms of Paragraph 9(c) from the contract attached to and incorporated into the Amended Complaint (D.E. 4-1), and notes that Plaintiff appears to have added the words "title agent", although those words are not found in the document itself.

15.     Admitted. However, Plaintiff has restated portions of the contract at issue and added highlights and emphasis on certain points, which are not found on the original.

16.     Denied.  Further answering, Paragraph 16 of the Amended Complaint reflects Plaintiff's overbroad interpretation of Paragraph 9(c)(i)'s plain language.  The actual language found in the contract incorporated into the Amended Complaint states that "Seller shall designate Closing Agent and pay for Owner's Policy and charges…"  (D.E. 4-1, p.4). That language refers only to charges associated with the Owner's Policy, and does not categorically allocate all charges that may be payable to the closing agent by the Seller, as some of the charges paid to the Closing Agent are attributable to services that are not directly related to the Owner's Policy.

17.     Admitted that the Seller designated Fidelity to conduct the closing and issue the title insurance policy. Also admitted that Fidelity accepted this designation.  The remainder of Plaintiff's allegations in Paragraph 17 of the Amended Complaint are denied.

18.    Admitted.

19.    Denied.  Further Answering and as noted in Paragraph 16 above, the allegations in Paragraph 19 similarly reflect Plaintiff's overbroad interpretation of Paragraph 9(c)(i)'s plain language.    The contract language does not encompass all fees for services rendered in connection with the closing and does not categorically allocate all fees, other than those related to a lender's policy, to the Seller.

20.    Admitted in part and Denied in part.  Fidelity denies that the document "detail[s] the receipts and disbursements made on Plaintiff's account."  Further answering, the document was presented to Plaintiff and executed by Plaintiff before any disbursements were made in connection with Plaintiff's real estate transaction.  Additionally, by signing that document, Plaintiff expressly authorized the disbursements described therein, including the payment of the $350 closing fee that Plaintiff paid to Fidelity. Fidelity also denies that the document attached to the Amended Complaint (D.E. 4-2) can be properly referred to as a "HUD."   The remaining allegations of Paragraph 20 of the Amended Complaint are admitted.

21.    Admitted in part and Denied in part.  Fidelity admits that Plaintiff paid a $350.00 closing fee, but denies that that fee was "improperly charged."

22.    Admitted in part and Denied in part.   Fidelity denies that the $350 charge that Plaintiff actually paid is addressed by the language in the contract attached to the Amended Complaint (D.E. 4-1).  The remaining allegations of Paragraph 22 are admitted.

23.    Denied.

24.    Denied.

25.     Denied.

26.     Without knowledge, therefore denied.

**CLASS REPRESENTATION ALLEGATIONS**

27.     Fidelity re-alleges and incorporates by reference all allegations set forth in the preceding paragraphs of this Answer, as if fully set forth verbatim here.

28.     Fidelity admits that Plaintiff purports to bring this action as a class action on behalf of a class of similarly situated person. Fidelity denies that this action can be properly maintained as a class action.  Remainder, if any, denied.

29.     Denied.

30.     Admitted in part and Denied in part. Fidelity admits that Plaintiff purports to bring this action as a class action on behalf of a class of similarly situated persons. Fidelity denies that this action can be properly maintained as a class action. Remainder, if any, denied.

31.     Admitted in part and Denied in part. Fidelity admits that Plaintiff purports to bring this action as a class action behalf of a class of similarly situated persons. Fidelity denies that this action can be properly maintained as a class action.  Remainder, if any, denied.

32.     Fidelity denies that Plaintiff has right to amend or modify the class definition absent leave of Court and after having shown good cause.

33.     Denied.

34.     Denied.

35.     Denied.

36.     Denied.

37.     Fidelity admits that there are 25,187 transactions that potentially fall within Plaintiff's proposed class definition.  Fidelity further admits that it maintains business records of all the real estate transactions in which it served as the Closing Agent. The remaining allegations of Paragraph 37 of Plaintiff's Amended Complaint are denied.

38.     Denied.

39.     Denied.

40.     Denied.

41.     Denied.

42.     Denied.

43.     Denied.

44.     Denied.

45.     Denied.

46.     Denied.

## COUNT I
### (Gross Negligence)

47.     Fidelity adopts and realleges its response to paragraphs 1 through 46 as if fully set forth herein.

48.     Admitted.

49.     Admitted in part and Denied in part.  Fidelity admits that it owed a duty of care to Plaintiff and to any other party involved in a real estate transaction in which Fidelity serves as the closing agent. Fidelity denies that duty always requires the closing agent to supervise and carry out the closing in accordance with the terms and instructions of the

purchase contract. This is especially true where, as here, the principals to the transaction provide written instructions to the closing agent that may not be the same as those found in the purchase contract.

50.     Denied.

51.     Admitted that Plaintiff was charged a closing fee. The remaining allegations of Paragraph 51 of the Amended Complaint are denied.

52.     Denied.

53.     Denied.

WHEREORE, Fidelity respectfully requests that this Honorable Court enter final judgment in its favor together with an award of taxable costs.

## COUNT II
## (Negligence)

54.     Fidelity adopts and realleges its response to paragraphs 1 through 46 as if fully set forth herein.

55.     Admitted.

56.     Admitted in part and Denied in part.  Fidelity admits that it owed a duty of care to Plaintiff and to any other party involved in a real estate transaction in which Fidelity serves as the closing agent. Fidelity denies that duty always requires the closing agent to supervise and carry out the closing in accordance with the terms and instructions of the purchase contract, particularly where, as here, the principals to the transaction provide written instructions to the closing agent that may not be the same as those found in the purchase contract.

57.     Denied.

58.     Admitted that Plaintiff was charged a closing fee. The remaining allegations of Paragraph 58 of the Amended Complaint are denied.

59.     Denied.

60.     Denied.

WHEREORE, Fidelity respectfully requests that this Honorable Court enter final judgment in its favor together with an award of taxable costs.

## COUNT III
## (Breach of Fiduciary Duty)

61.     Fidelity adopts and realleges its response to paragraphs 1 through 46 as if fully set forth herein.

62.     Admitted to the extent that Fidelity owed a limited fiduciary duty equally to both parties to the real estate transaction.

63.     Admitted in part and Denied in part.  Fidelity admits that it owed a duty of care to Plaintiff and to any other party involved in a real estate transaction in which Fidelity serves as the closing agent. Fidelity denies that duty always requires the closing agent to supervise and carry out the closing in accordance with the terms and instructions of the purchase contract, particularly where, as here, the principals to the transactions provide written instructions to the closing agent that may not be the same as those found in the purchase contract.

64.     Denied.

65.     Denied.

66.    Denied. Further answering, as the Buyer's Statement attached to the Amended Complaint as Exhibit "B" (D.E. 4-2) reflects, Plaintiff expressly authorized the disbursement of the closing fee before the purchase transaction was consummated.

67.    Denied.

68.    Denied.

69.    Denied.

70.    Denied.

71.    Denied.

72.    Denied.

WHEREORE, Fidelity respectfully requests that this Honorable Court enter final judgment in its favor together with an award of taxable costs.

## COUNT IV
## (Unjust Enrichment)

73.    Fidelity adopts and realleges its response to paragraphs 1 through 46 as if fully set forth herein.

74.    Admitted that Plaintiff purports to plead its Unjust Enrichment claim asserted in Count IV of the Amended Complaint in the alternative. Fidelity however Denies that its claim is available to Plaintiff even when pled in the alternative.

75.    Denied.

76.    Admitted.

77.    Denied.

78.    Denied.

79.     Denied.

WHEREFORE, Fidelity respectfully requests that this Honorable Court enter final judgment in its favor together with an award of taxable costs.

<u>**AFFIRMATIVE DEFENSES**</u>

**First-Affirmative Defense - Voluntary Payment Doctrine**

Plaintiff paid the closing fee to Fidelity under a claim of right and with knowledge of all facts.  Accordingly, all of Plaintiff's claims in this action are precluded by the Voluntary Payment Doctrine.

**Second Affirmative Defense – Comparative Fault**

Plaintiff received and signed the Buyer's Statement (D.E. 4-2) attached to and incorporated into the Amended Complaint, thereby approving the payment of the closing fee that gives rise to all of his claims in this action. By doing so, Plaintiff induced Fidelity to disburse that fee from the escrowed funds when it closed the transaction.  Had Plaintiff not signed the Buyer's Statement, the closing fee would not have been disbursed.  Accordingly, if the payment of the closing fee was improper, Plaintiff, not Fidelity is primarily responsible.

**Third Affirmative Defense – Reliance Not Justifiable**

To the extent that Plaintiff alleges it relied on Fidelity to ensure that the closing fee charged to Plaintiff was expressly authorized by the purchase contract, that reliance would not have been reasonable because Fidelity expressly asked Plaintiff, in writing, to "carefully review" and approve all closing charges himself, (D.E. 4-2, p.2), and Plaintiff did in fact

review and approve all closing charges, including the closing fee, as evidenced by his signature on the Buyer's Statement (D.E. 4-2).

### Fourth Affirmative Defense – Retention of Closing Fee Not Inequitable

Fidelity preformed services for Plaintiff at his request and with his knowledge, including but not limited to services that were not directly related to the issuance of title insurance.  Furthermore, Plaintiff expressly agreed to pay the $350 closing fee that his claims are based upon.  Accordingly, it would not be unjust for Fidelity to retain this earned fee that Plaintiff agreed to pay.

### Fifth Affirmative Defense – Estoppel

Plaintiff signed the Buyer's Statement incorporated into the Amended Complaint which contains affirmative statements that the Plaintiff "carefully reviewed" the relevant disclosures and "approve[d] and agree[d] to the payment of all fees, costs, expenses and disbursements" described therein. (D.E. 4-2, p.2).   If Plaintiff had not signed the Buyer's Statement and approved all of the disbursements, Fidelity would not have disbursed the now disputed closing fee. Thus, the Buyer's Statement contains representations demonstrating that Plaintiff provided his informed consent to the disbursement of the closing fee before Fidelity actually disbursed that fee.  Fidelity relied on Plaintiff's representations to its detriment now that Plaintiff seeks to impose liability on Fidelity for having disbursed the closing fee.

### <u>DEMAND FOR TRIAL BY JURY</u>

Defendant Fidelity National Title of Florida, Inc. demands trial by jury on all claims so triable.

Dated: January 15, 2020.

Respectfully submitted,

By: /s/ Jeffrey N. Golant
Jeffrey N. Golant, Esq.
Florida Bar No. 077732
Mary Ellen R. Himes, Esq.
Florida Bar No. 87763
FIDELITY NATIONAL LAW GROUP
Attorneys for Defendant, Fidelity
National Title of Florida, Inc.
100 West Cypress Creek Road
Suite 889
Fort Lauderdale, Florida 33309
Telephone No: (954) 465-2145
Facsimile No: (954) 414-2101
Email: Jeffrey.Golant@fnf.com
Email: maryellen.himes@fnf.com
Secondary: pleadingsfl@fnf.com

## CERTIFICATE OF SERVICE

I hereby certify that on January 15, 2020, I filed the foregoing document using the CM/ECF system, and that it was simultaneously served on all counsel of record via notice of electronic filing generated by the CM/ECF system.

/s/ Jeffrey N. Golant
Jeffrey N. Golant, Esq.